**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 02: 08-cr-0312 |
| | ) | 02: 10-cv-0187 |
| HAROLD D. PRICE | ) | |

**MEMORANDUM OPINION AND ORDER**

March 30, 2010

Presently before the Court for disposition is the MOTION UNDER 28 U.S.C. § 2255

TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL

CUSTODY filed *pro se* by Petitioner / Defendant Harold D. Price ("Price") (*Document Nos. 36

and 38* ), the RESPONSE in opposition filed by the government (*Document No. 39*), and the

PETITIONER'S TRAVERSE filed *pro se* by Harold D. Price (*Document No. 40*).  For the

reasons discussed below, the Court will deny the § 2255 motion without holding an evidentiary

hearing.

The relief sought under 28 U.S.C. § 2255 is reserved for extraordinary

circumstances.  *See Brecht v. Abrahamson*, 507 U.S. 619 (1993).  Section 2255 provides, in

relevant part:

> A prisoner in custody under sentence of a [federal] court . . .  claiming the
> right to be released upon the ground that the sentence was imposed in
> violation of the Constitution or laws of the United States, or that the court
> was without jurisdiction to impose such sentence, or that the sentence was
> in excess of the maximum authorized by law or is otherwise subject to
> collateral attack, may move the court which imposed the sentence to
> vacate, set aside or correct the sentence.

Although § 2255 includes a provision for a prompt evidentiary hearing, a federal court may deny a § 2255 motion without holding an evidentiary hearing if the "motion and the files and records of the case conclusively show" that the petitioner is not entitled to relief. 28 U.S.C. § 2255; *see also United States v. Booth*, 432 F.3d 542, 545-46 (3d Cir. 2005); *United States v. McCoy*, 410 F.3d 124, 131 (3d Cir. 2005); Rule 8(a), 28 U.S.C. foll. § 2255.

### Procedural and Factual Background

The parties and the Court are familiar with the extensive background facts of Price's criminal prosecution, conviction, and sentence. Therefore, the Court will not detail the facts again. However, the following is a brief recitation of the procedural facts salient to the issues presently pending before the Court.

### Criminal No. 07-310

On August 23, 2007, a criminal Complaint was filed against Price which charged him with Possession of a Firearm by a Convicted Felon, on or about May 3, 2007, in violation of Title 18, United States Code, §§ 922(g)(1) and 924(e)(1). In the Affidavit in Support of a Criminal Complaint, submitted by Ryan Michael Renning, Special Agent with the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives, Special Agent Renning averred that a search of the Records of the Court of Common Pleas of Allegheny County, Commonwealth of Pennsylvania revealed that Price had been convicted four (4) times for drug trafficking crimes, each conviction punishable by a sentence which exceeds one (1) year.

On August 28, 2007, a federal grand jury in the Western District of Pennsylvania returned a one-count indictment in which Price was charged with Possession of A Firearm, on

2

or about May 3, 2007, in violation of Title 18, United States Code, Sections §§ 922(g)(1) and

924(e)(1). Specifically, the Indictment charged Price with the unlawful possession of three (3)

semi-automatic handguns after having been convicted of four (4) felony drug-trafficking

offenses.

On August 28, 2007, Defendant, with counsel, appeared at an arraignment and pled

Not Guilty to the charge.  The court ordered Defendant detained pending trial because, *inter*

*alia,* if convicted, he faced a mandatory minimum 15-year sentence of imprisonment.  *See*

Order of Detention Pending Trial (Document No. 19).

On April 1, 2008, Price, through counsel, filed the following pretrial motions:

Motion in Limine to Compel the Government to Provide Defendant with a Statement of

Uncharged Misconduct Evidence; Motion to Dismiss the Indictment on Jurisdictional Grounds;

and Motion to Suppress Evidence.  *See* Document Nos. 39, 40, and 41.

On May 2, 2008, the Court held an evidentiary hearing on Price's suppression

motion.  The record was kept open until May 19, 2008.  On May 20, 2008, the record was

closed after counsel for Defendant informed the Court that he would not be presenting any

additional witnesses.  After extensions, post-hearing briefs were timely by both sides.  On July

24, 2008, the Court denied Defendant's suppression motion, as well as the other pretrial

motions which had been filed on his behalf.

A pretrial conference was conducted on August 5, 2008, at which time the case was

scheduled for jury trial on August 18, 2008.  At the request of Defendant, the scheduled trial

date was continued until September 8, 2008.

Pursuant to a written plea agreement between the parties, which was entered in

Criminal Case No. 08-312, discussed *infra,* the government moved to dismiss the Indictment,

which motion was granted.

**Criminal No. 08-312**

On August 18, 2008, a two-count criminal Complaint was filed against Price which

charged him with Possession With The Intent to Distribute Less than Fifty (5) kilograms of

Marijuana, on or about May 3, 2007, in violation of Title 21, United States Code, §§ 841(a)(1)

and 841(b)(1)(D), and Possession of a Firearm in Furtherance of a Drug Trafficking Crime, on

or about May 3, 2007, in violation of Title 18, United States Code, § 924(c)(1)(A)(i).  On

August 20, 2008, the government filed an Information To Establish Prior Convictions, which

established that Price had four (4) previous felony drug convictions in the Court of Common

Pleas of Allegheny County, Pennsylvania.

On that same day, August 20, 2008, Price appeared before the Court, with counsel,

and waived prosecution by indictment and pled guilty to both counts of the Information.  A

signed written plea agreement was made a part of the record which provided, *inter alia*, that

Price was waiving most of his appellate rights and all of his collateral attack rights.  The plea

agreement also provided that after the imposition of sentence the government would move to

dismiss Count One of the Indictment at Criminal No. 07-310.

A Presentence Investigation Report ("PSI") was prepared by the Probation Office on

October 2, 2008, with an Addendum to the PSI prepared on November 18, 2008.  On October

31, 2008, the government filed its Position with Respect to Sentencing Factors in which it

reported that it had no objections, additions, and/or modifications to the PSI.  On  November

17, 2008,  Defendant, through counsel, filed his Position with Respect to Sentencing Factors in which he reported that he had no objections to the guideline calculations contained in the PSI, but argued for a variance from the advisory guideline range under 18 U.S.C. § 3553(a). Defendant argued that his status as a "career offender" under the advisory Guidelines produced an extreme result which was not reasonable. Under the Career Offender Table for 18 U.S.C. § 924(c) Offenders, with a three-level reduction for acceptance of responsibility, Price was subject to the following sentencing guideline scheme: an advisory guideline range of imprisonment of 262-327 months with a Criminal History Score of VI.  *See* USSG 4B1.1(c)(3).

The government filed its Supplemental Position With Respect to Sentencing Factors, in which it argued that Defendant's status as a "career offender" under the advisory Guidelines accurately reflected his extensive, dangerous criminal history and his high likelihood of recidivism.

A sentencing hearing was conducted on March 12, 2009, at which time the Court granted Price a three-level downward variance from the applicable advisory sentencing guidelines.  Price was thereafter sentenced to a term of imprisonment of 210 months consisting of 114 months at Count One and 96 months at Count Two, such terms to be served consecutively, to be followed by 5 years of supervised release.  Judgment was entered that same day.

On March 17, 2009, Defendant, through counsel, requested an extension of time in which to file a notice of appeal.  By Order of Court dated March 18, 2009, Defendant's request was granted and Defendant was given an extension until April 27, 2009, to file a Notice of Appeal.  The docket reflects that Price never filed a Notice of Appeal.

On April 23, 2009, Price, *pro se* filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Document No. 31) in which he asked the Court to vacate, set aside, or correct his sentence based on claims of alleged ineffective assistance of counsel. In accordance with the *Miller* rule enunciated by the United States Court of Appeals for the Third Circuit in *United States v. Miller,* 197 F.3d 644 (3d Cir. 1999), the Court advised Price that he had a number of options and he may:

(1)  have his motion ruled upon as filed;

(2)  if his motion is not styled as a § 2255 motion, have his motion recharacterized as a § 2255 motion and heard as such, but lose his ability to file successive petitions absent certification by the court of appeals; or

(3)  withdraw his motion, and file one all-inclusive § 2255 petition within the one-year statutory period.

*Miller,* 197 F.3d at 652.

Price notified the Court that he was electing to withdraw that motion and would file one all-inclusive Section 2255 petition within the one year statutory period.

On February 11, 2010, Price filed the instant Section 2255 motion in which he raises two ineffective assistance of counsel claims: (i) that counsel allegedly induced him to plead guilty against his will to charges that "are neither true nor supported by the evidence;" and (ii) that counsel failed to preserve the ability of Price to file a direct appeal and/or failed to file a direct appeal from the sentence.

## Evidentiary Hearing

Under 28 U.S.C. § 2255, a judge must determine whether to summarily dismiss the petition under Rule 4(b) of the Rules Governing § 2255 Proceedings ("If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is

not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party."), or to order an evidentiary hearing under Rule 8 of the Rules Governing § 2255 Proceedings.

A district court should hold an evidentiary hearing in section 2255 cases unless "the motion, files and records show conclusively that the movant is not entitled to relief." *United States v. Nahodil*, 36 F.3d 323 (3d Cir. 1994). In deciding whether to hold a hearing, a judge may draw upon personal knowledge and recollection of the events that occurred in his or her presence. *See Government of Virgin Islands v. Nicholas*, 759 F.2d 1073, 1077 (3d Cir. 1985).

After reviewing the filings in this case, the complete record, and drawing upon the Court's personal knowledge and recollection of the events that occurred in its presence, the Court finds that an evidentiary hearing is not required because Price has failed to raise any genuine issue of material fact. *See United States v. Essig*, 10 F.3d 968, 976 (3d Cir. 1993). Additionally, the files and records of the case conclusively establish that Price is not entitled to relief. *United States v. Booth*, 432 F.3d 542, 545-46 (3d Cir. 2005); *United States v. McCoy*, 410 F.3d 124, 131 (3d Cir. 2005).  Therefore, the Court will proceed to the merits of the § 2255 motion.[1]

### Standard of Review

The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel and exists "in order to protect the fundamental right to a fair trial."

---

[1]     "When a motion is made under § 2255, the question of whether to order a hearing is committed to the sound discretion of the district court." *United States v. Day*, 969 F.2d 39, 41-42 (3d Cir. 1992).

*Lockhart v. Fretwall*, 506 U.S. 364, 368 (1993) (*quoting Strickland v. Washington*, 466 U.S. 668, 684 (1984)).

The United States Supreme Court has formulated a two-part test for determining whether counsel rendered constitutionally ineffective assistance:  (i) whether counsel's performance was unreasonable; and (ii) whether counsel's unreasonable performance actually prejudiced the defense.  *Strickland,* 466 U.S. at 687.  To determine whether counsel performed below the level expected from a reasonably competent attorney, it is necessary to judge counsel's challenged conduct on the facts of the particular case, viewed at the time of counsel's conduct.  *Id.* at 690.  A petitioner who claims that he or she was denied effective assistance of counsel carries the burden of proof.  *United States v. Cronic*, 466 U.S. 648, 658 (1984).

The first prong of the *Strickland* test requires that a defendant establish that his attorney's representation fell below an objective standard of reasonableness by committing errors so serious that he or she was not functioning as "counsel" guaranteed by the Sixth Amendment.  *Strickland*, 466 U.S. at 688.  A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the totality of the circumstances, the challenged action "might be considered sound trial strategy."  *Id*. at 689.  The question is not whether the defense was free from errors of judgment, but whether counsel exercised the customary skill and knowledge that normally prevailed at the time and place*. Id.*

The second prong requires a defendant to demonstrate that counsel's errors deprived him of a fair trial and the result was unfair or unreliable.  *Id*.  To prove prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors,

the result of the proceeding would have been different.  *Id.* at 694.  A "reasonable probability" is one that is sufficient to undermine confidence in the outcome.  *Id.*

The Court of Appeals for the Third Circuit has endorsed the practical suggestion in *Strickland* to consider the prejudice prong before examining the performance prong "because this course of action is less burdensome to defense counsel."  *United States v. McCoy*, 410 F.3d 124, 132 n.6 (3d Cir. 2005); *see Strickland*, 466 U.S. at 694 (stating that, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so," the prejudice prong should be examined before the performance prong "to ensure that ineffectiveness claims do not become so burdensome to defense counsel that the entire criminal justice system suffers as a result").

Furthermore, the United States Supreme Court has determined that under the *Strickland* test, a reviewing court must "assess counsel's overall performance throughout the case to determine whether the 'identified acts or omissions' overcome the presumption  that counsel rendered reasonable professional performance."  *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986).

### Discussion

As this Court observed, the government had substantial evidence of Price's guilt in this case, of which he and his counsel were well aware when he pled guilty on the charges contained in the Information.  The testimony and evidence adduced during the suppression hearing presented a clear situation in which Price was found to be in possession with intent to distribute less than 50 kilograms of marijuana and possession of a firearm in furtherance of a drug-trafficking crime.

On May 3, 2007, Pennsylvania State Police troopers arrested Price at his residence following a domestic dispute which involved Price and his wife.  Defendant was placed under arrest for simple assault and terroristic threats and transported to the police station for processing.  One trooper remained on the scene and interviewed Price's wife, the victim.  He asked during the course of that interview whether Price had any weapons in the house.  Mrs. Price told Trooper Callahan that she recently had observed Price with a semi-automatic handgun in the residence, but that she was uncertain where he kept it.  Trooper Callahan then asked Mrs. Price for consent to search the residence, the detached garage, and the GMC Suburban.  She provided both verbal and written consent for the search.

Thereafter, Trooper Callahan discovered and seized three (3) semi-automatic firearms, approximately three (3) pounds of marijuana, marijuana smoking devices, two (2) digital scales, and a small amount of cocaine.  Mrs. Price denied ownership of the firearms or the drugs and law enforcement databases confirmed that Mrs. Price had never purchased, owned, or transferred a firearm in Pennsylvania.  *See* Memorandum Opinion and Order of Court denying motion to suppress evidence (Document No. 57 - Criminal No. 07-cr-310); and Transcript of Waiver of Indictment and Change of Plea Proceedings at 28-30 (Document No. 41- Criminal No. 08-312).

Price seeks to challenge both his guilty plea and his waiver of rights to appeal and file a collateral attack of his conviction and sentence.  The Court will address the validity of the guilty plea separately from the appeal waiver.  Although the tests overlap, they are not identical and in the context of this case, it is appropriate to evaluate the guilty plea itself at the outset.

1.      **"Counsel ineffective for inducing Petition to plea guilty against Petitioner's will."**

Price argues that "it cannot be said that Price's guilty plea was knowingly and intelligently made." Mot. at 21. This claim can be dismissed rather summarily because the record completely belies Price's allegation.

The established test for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford,* 400 U.S. 25, 31 (1970). Where a defendant is represented by counsel and enters a guilty plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice "was within the range of competence demanded of attorneys in criminal cases. " *Hill v. Lockhart*, 474 U.S. 52, 56 (1985).

*Hill v. Lockhart* holds that a claim of ineffective assistance of counsel in the context of a guilty plea is subject to the same standard of attorney competence set forth in the first prong of the *Strickland* test. 474 U.S. at 58-59. However, the *Hill* Court specifically held that where the collateral challenge is to a plea of guilty rather than a trial verdict, the "prejudice" prong requires the petitioner to "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.*; *see Parry v. Rosemeyer*, 64 F.3d 110, 118 (3d Cir. 1995) (citing *Hill* ). In setting forth that standard, the Court in *Hill* emphasized the "fundamental interest in the finality of guilty pleas." *Hill*, 474 U.S. at 58 (*citing United States v. Timmreck*, 441 U.S. 780, 784 (1979)).

The Court finds that on its face, the instant motion fails to state a claim under the *Hill* test, because it is devoid of any assertion that but for the alleged errors of counsel, Price would not have pled guilty and would have insisted on going to trial. *See Hill*, 474 U.S. at 60.

However, assuming *arguendo*, that Price's asserted position has surmounted the *Hill* threshold, and giving Price the benefit of every doubt and inference, the Court finds as a matter of law that his claim of ineffective assistance of counsel in his decision to enter a guilty plea is without merit. The record shows that Price was not prejudiced by counsel's alleged actions, thus failing the second prong of the *Strickland* test.

On the morning of August 20, 2008, Price appeared before this Court to (i) waive his right to indictment by a grand jury and (ii) enter a guilty plea to both counts of the Criminal Information filed at Criminal 08-312.

At the hearing, the Court placed Price under oath and conducted an extensive colloquy with him in open session and in very clear, plain language. The Court found Price competent to waive his right to an indictment and that the waiver of indictment was not only intelligent and knowing, but also his free and voluntary act. Transcript at 10-11. Next, the Court explained to Price his constitutional and other rights, including: Defendant's right to a trial by jury; his privilege against self-incrimination; his right to participate in jury selection; the applicable burden of proof beyond a reasonable doubt which the government would be required to meet at trial; and his right to confront, question and cross-examine witnesses at trial. (Tr. at 11-14). Throughout the colloquy, Price indicated that he understood the effect of a guilty plea and stated to the Court that he still desired to plead guilty.

The Court explained the minimum and maximum sentence or penalties which may be imposed upon Price by the Court for the commission of the crimes with which he had been charged:

> THE COURT:    For Count 1, possession with the intent to distribute less than
> 50 kilograms of marijuana. A term of imprisonment of not

more that five years, a fine up to $250,000.  If imprisoned, a term of supervised release of at least two years, and a mandatory special assessment under 18 United States Code, section 3013, of $100.  Do you understand those potential penalties?

MR. PRICE:            Yes, Sir.

THE COURT:           For a second or subsequent felony drug conviction that is final, whether federal, state, or foreign, a term of imprisonment of not more than ten years, a fine not to exceed $500,000, a term of supervised release of at least four years, and a mandatory special assessment of $100.  Do you understand those penalties?

MR. PRICE:            Yes, Sir.

THE COURT:           For Count 2, possession of a firearm in furtherance of a drug-trafficking crime, a term of imprisonment of not less than five years, nor more than life imprisonment.  Said term of imprisonment must be imposed to be served consecutively to any other term of imprisonment imposed for a conviction on any other counts in the information.  A fine of up to $250,000, a term of supervised release of not more than three years, and a mandatory special assessment of $100.  Do you understand those potential penalties?

MR. PRICE:            Yes, Sir.

The Court then explained that while the United States Sentencing Guidelines were no longer mandatory, but rather advisory, the Court would consider them in any sentence that it may impose.  The Court informed Defendant that it would be unable to determine his advisory guideline range until after a presentence investigation report was prepared by the United States Probation Office, and until after both he and the government had an opportunity to challenge the reported facts and potential application of the guidelines contained in that report. The Court asked the Assistant U.S. Attorney what the position of the government was in regard to the applicable sentencing guideline range.  The Assistant U.S. Attorney responded as follows:

13

> Your Honor, the government believes that due to the defendant's criminal history, he will be deemed an armed career criminal, and under Chapter 4 of the guidelines, the advisory guideline range begins at 30 years to life. He would receive a reduction for acceptance of responsibility, and so, we do believe the advisory guideline range would be 262 to 327 months.

(Tr. at 18.)

The Court also asked counsel for Defendant what his position was with regard to the applicable sentencing guideline range.  He responded, "I suspect Mr. Rivetti is correct, Your Honor."  (*Id.*)[2]

The Court then informed Defendant that "after it's been determined what guideline range of sentences applies to a case, the Judge has the authority to not follow the recommended guideline range and impose a sentence that is more severe, that is, longer, or less severe, that is, shorter than that recommended by the guidelines.  Do you understand that?"  (*Id.* at 19). Defendant stated that he understood everything that the Court had stated to him, including the

---

[2] It is recognized that when a defendant considers the government's offer of a plea agreement, a reasonably competent attorney will attempt to learn all of the facts of the case and to make an estimate of a likely sentence. *See Hill*, 474 U.S. at 56-60). Before the attorney allows the client to plead guilty, the attorney must also communicate the results of that analysis. *McMann* v. Richardson, 397 U.S. 759, 769-71 (1970). Although the attorney's analysis need not provide a precisely accurate prediction of the respective consequences of pleading guilty or of going to trial, the scrutiny must be undertaken in good faith. *Id.* It is deficient performance for an attorney to fail to provide good-faith advice about the sentencing consequences of a guilty plea. *Id.* at 769-71.

But the established general rule also is that when an adequate guilty plea hearing has been conducted, an erroneous prediction or assurance by defense counsel regarding the likely sentence does not constitute grounds for invalidating a guilty plea on grounds of ineffective assistance of counsel. *See United States v. Shedrick*, 493 F.3d 292, 298-300 (3d Cir. 2007) ("[A]n erroneous sentencing prediction by counsel is not ineffective assistance of counsel where, as here, an adequate plea hearing was conducted.").

minimum and maximum penalties for his offenses.  He further stated that he understood that in

Paragraph A(10) of his plea agreement, he and the government had agreed that he would waive

his right to take a direct appeal, subject to very limited exceptions, and that he also waived his

right to file a motion to vacate sentence under Title 28, United States Code, section 2255, and

the right to file any other collateral proceeding attacking his conviction or sentence.

Counsel for Price, in summary form, then set forth his and his client's understanding

of the plea agreement, including the fact that the United States Attorney would be filing an

Information under Title 21, United States Code, section 851, which "charges the maximum

sentence from the marijuana count, Count 1 of the information, from five years to a ten year

maximum."  *Id.* at 22.  The Assistant U.S. Attorney stated on the record that he agreed with

defense counsel's representations.

The Court then specifically asked Price a series of questions about the plea

agreement, including whether he had read the plea agreement, reviewed it with counsel,

understood all the contents of the agreement, and whether his signature was placed on the

document of his own free will.  *Id*. at 24.

The Assistant U.S. Attorney proceeded to place on the record the elements of the

separate offenses, as well as a lengthy factual recitation of the government's evidence.  After the

Assistant U.S. Attorney summarized Price's involvement in the offenses, the Court asked Price

whether he agreed with the government's summary of what he did.  In response, Price stated:

"Um, I need time to talk to my counsel."  *Id.* at 31.

Thereafter, a discussion between Price and his attorney was held off the record at

counsel table.  Immediately upon the conclusion of the discussion, the Court again asked Price:

15

THE COURT:        Do you agree with the prosecution's summary of what you did?

MR. PRICE:        **Yes, sir.**

THE COURT:        Are there any additions or corrections that you would like to make on the record?

MR. HACKNEY:      Not presently, Your Honor.  If there is any, we'll put them in the memorandum, or try to get them into the presentence report.

THE COURT:        The Court finds that there is a factual basis to accept the defendant's plea of guilty, if the same is now entered.

                  Mr. Price, do you still wish to plead guilty?

MR. PRICE:        **Yes, Sir**.
                  . . . .

THE COURT:        So, if you enter a plea of guilty, will it be your own knowing, free and voluntary act.

MR. PRICE:        **Yes, Sir.**

MR. HACKNEY:      Your Honor, I might state that this plea agreement was my idea, and it serves to eliminate a mandatory minimum sentence of 15 years.  And so, in that sense, there was inducement that came from me, Your Honor, to do that.

THE COURT:        I understand.

(Tr. at 31, emphasis added.)  The Court proceeded to ask Price the following:

THE COURT: Mr. Price, you're charged by the United States of America in the criminal information at criminal No. 08-312 with the following: In Count 1, possession with intent to distribute less than 50 kilograms of marijuana.  How do you plead to this charge?

MR. PRICE: Guilty.

THE COURT: In Count 2, you're charged with the possession of a firearm in furtherance of a drug trafficking crime. How do you plead to this charge?

MR. PRICE: Guilty.

(Tr. at 33-34.)

The Court entered a judgment of guilty on the record and sentencing was scheduled on November 21, 2008.

The Probation Office prepared a Presentence Investigation Report ("PSI"), and as expected, it confirmed Price's extensive criminal history and his status as a career offender due to his prior felony drug convictions.

At the request of defense counsel, the sentencing hearing was postponed until March 12, 2009. At the sentencing hearing, Price confirmed that he had reviewed the PSI, the filings of the parties, and the Court's Tentative Findings and Rulings. The Court specifically asked Price if he was "in any way dissatisfied with the service, advice or representation provided by Mr. Hackney in this matter," to which Price replied, "I will say no." Sentencing Transcript, at 15.

As discussed *supra*, the Court granted Price a three-level downward variance and sentenced Price to a term of imprisonment of 210 months, consisting of 114 months at Count One and 96 months at Count Two, such terms to be served consecutively, to be followed by 5 years of supervised release.

Not once during either the waiver of indictment / change of plea hearing or the sentencing hearing did Price assert that he was dissatisfied with his counsel; that his counsel had induced him to plead guilty against his will; or did he claim, as he now alleges in the instant Section 2255 motion, that the crimes to which he was pleading guilty were not "true" or "supported by the evidence." *See United States v. Dickler,* 64 F.3d 818, 823 & n.7 (3d Cir.

17

1995) ("When a defendant under oath expressly admits facts at a plea hearing in the course of

persuading the court to accept his plea, he may not thereafter deny those facts any more than he

may thereafter deny the facts alleged in the indictment and admitted by his plea.")

The Court finds that Price's contention that his counsel's "performance" was

"deficient" is completely contrary to the record in this case and contrary to his assertions, under

oath, at the plea and sentencing hearings.  Attorney Hackney represented Price competently

throughout the lengthy course of these cases.  Immediately before asking Price how he pled to

the charges near the end of the plea hearing, the Court specifically asked:

> THE COURT:     Are you satisfied in all respects with the advice and
>                representation which your attorney, Mr. Hackney, has
>                provided to you?
>
> MR. PRICE:     **Yes, Sir.**

Transcript at 33 (emphasis added).

During the sentencing hearing, the Court again asked Price if was "in any way

dissatisfied with the service, advice, or representation provided by Mr. Hackney in this matter,"

and Price replied, "I will say no."  Sentencing Transcript at 15.

The Court finds that Price acknowledged on at least two occasions that he was

satisfied with his counsel's performance and that he understood the charges and the facts leading

to them.  Further, Price has not pointed to anything but his own post-hoc, self-serving statements

that his counsel was ineffective for "inducing" him to plead guilty to charges "that are neither

true nor supported by the evidence."   The quantity of marijuana, the manner in which it was

packaged, the two scales, and the firearms all support a finding of distribution activities.

Similarly, the presence of a handgun, which was stored with the marijuana, the cocaine and

other drug paraphernalia, coupled with Price's status as a convicted felon, supports a finding that the gun was possessed in furtherance of his drug trafficking activities.

For all these reasons, the Court finds that the record directly refutes Price's contention that his counsel was ineffective for "inducing" him to plead guilty to charges "that are neither true nor supported by the evidence."

>    2.      **"Attorney Declined to Pursue an Appeal as Requested by Petitioner and Counsel Further Failed to Preserve the District Court's Denial of Petitioner's Suppression Motion by Inducing Petitioner to Accept a Plea Agreement Put Forth by the Government That Precluded Petitioner From Taking An Appeal."**

The Court has already rejected Price's argument that he was "induced" into accepting the plea agreement, see *supra,* and thus, the Court will not elaborate on that issue again.  At both the plea and sentencing hearings, an extensive colloquy was conducted by the Court with Price and at all times Price assured the Court that he was fully satisfied with the advice and representation of his defense counsel.  The Court continues to find that Price's plea  represents a "voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford,* 400 U.S. 25, 31 (1970).

It is well settled that a defendant may validly waive his right to appeal or otherwise collaterally attack his conviction and sentence.  *United States v. Shedrick,* 493 F.3d 292, 297 (3d Cir. 2007); *United States v. Khattack*, 273 F.3d 557,  560-62 (3d Cir. 2001). Courts honor such waivers unless either the defendant did not knowingly and voluntarily agree to the waiver, or the waiver would work a miscarriage of justice.  *Khattack*, 273 at 562.  "[B]y waiving the right to

19

appeal, a defendant necessarily waives the opportunity to challenge the sentence imposed, regardless of the merits." *Id.* at 561.

In the case *sub judice,* Price waived his right to a jury trial when he entered his guilty plea. He also waived his right to appeal and to file a collateral attack of the sentence he received. In analyzing Price's § 2255 petition, the Court will apply the rule concerning burden of proof announced in *United States v. Mabry*, 536 F.3d 231 (3d Cir. 2008), *cert. denied*, 129 S.Ct. 2789 (2009), a case which addressed waivers of rights of appeal and collateral attack in the context of a § 2255 petition. Our appellate court explained the burden of proof, as follows:

> Whereas a defendant bears the burden of presenting an argument that would render his waiver unknowing or involuntary, a court has an affirmative duty both to examine the knowing and voluntary nature of the waiver and to assure itself that its enforcement works no miscarriage of justice, based on the record before it . . . . [A] district court should carefully examine both whether the waiver was knowing and voluntary and whether it results in a miscarriage of justice . . . . [A] district court has an independent obligation to conduct an evaluation of the validity of a collateral waiver. Compliance with this obligation aids our review and ensures that the defendant's rights are carefully considered.

*Id.* at 237-38 (*citing Khattack*, 273 F.3d at 563).

Price contends that ineffective assistance of counsel caused his counsel to fail to file a direct appeal of his conviction and sentence and that such ineffectiveness entitles him to relief under Section 2255. The Court will assume *arguendo* for the purpose of this Memorandum Opinion only that counsel did fail to file a direct appeal although Price indicated a desire to file.

In *Mabry*, our appellate court addressed the precise issue of what test to apply where it is claimed in a Section 2255 petition that counsel failed to file a direct appeal after defendant had waived the appeal rights in question. In *Mabry*, a Section 2255 petitioner complained that

his counsel had failed to file an appeal notwithstanding his request that counsel do so.  The

Court of Appeals ruled as follows:

> While a defendant may be entitled to habeas relief if his attorney
> ineffectively fails to file a requested appeal because it is presumed to be
> prejudicial under *Flores-Ortega*, if that same defendant has effectively
> waived his right to habeas, he cannot even bring such a claim unless the
> waiver fails to pass muster under an entirely different test: one that
> examines its knowing and voluntary nature and asks whether its
> enforcement would work a miscarriage of justice.
>
> . . . .
>
> We will consider the validity of the collateral waiver as a threshold issue
> and employ an analysis consistent with other waiver cases.

*Id.* at 241-42.  Applying that general test to the record in *Mabry*, the appellate court engaged in

the independent review it expected of a district court and concluded that petitioner's waiver of

appeal and collateral attack rights was knowing and voluntary, and that enforcing the waiver

would not result in a miscarriage of justice.  *Id.* at 237-39.  The Court reaches the same

conclusion on the record presented here.

"[A] district court has an independent obligation to conduct an evaluation of the

validity of a collateral waiver."  *Id.* at 238.  The court must specifically examine: (i) the knowing

and voluntary nature of the waiver, based on what occurred and what defendant contends, and

(ii) whether enforcement would work a miscarriage of justice.  *Id.* at 238.

The *Mabry* court stated as to the knowing and voluntary aspect of its analysis as

follows:

> The written plea agreement here clearly provides that the waiver is very
> broad, admits of no exceptions, and applies to both direct appeal and
> collateral challenge rights.  Counsel explained the waiver to Mabry and
> Mabry signed it, acknowledging that he understood the terms of the
> agreement.

> The colloquy similarly countermands any suggestion that the waiver was
> not knowing and voluntary.  Having scrutinized the colloquy as we are
> required to do when reviewing the enforcement of a waiver, we are
> satisfied that the district court 'inform[ed] the defendant of, and
> determine[d] that the defendant underst[ood] . . . the terms of any plea -
> agreement provision waiving the right to appeal or to collaterally attack
> the sentence' as Federal Rule of Criminal Procedure 11(b)(1)(N) requires.
> Before the court accepted the plea agreement, it assured itself that Mabry
> had not been coerced or misled in any way into entering the plea
> agreement.  The court explained the waiver at some length, Mabry
> responded directly to the court's questions, the prosecution reviewed the
> waiver with the defendant in open court, and defense counsel was
> permitted to explain further.
>
> . . . .
>
> Indeed the colloquy amply demonstrates that the District Court took care
> to apprise Mabry of the consequences of the waiver and ensure that he
> understood the terms of the plea agreement and entered into it willingly.
> Accordingly, we conclude that the waiver was knowing and voluntary.

*Id*. at 238-39.

The Rule 11 plea hearing in this case similarly covered all the topics described by the *Mabry* court, both in the review of the written document agreeing to and explaining the waiver, and in the direct colloquy on the record between the district court and Price.  The signed written plea agreement, discussed and signed by Price and his counsel, is in the record.  *See* Document No. 7.

Price was personally addressed at considerable length by the Court during the Rule 11 plea hearing, including but not limited to the following colloquy:

THE COURT:  Do you also understand that ordinarily you or the government may have the right to appeal any sentence that I impose. However, I note that in Paragraph A(10) of your plea agreement, you and the government agreed that you would waive your right to take a direct appeal from your conviction or sentence under 28 United States Code, Section 1291, or 18

22

United States Code, Section 3742, subject to the following exceptions:

If the United States appeals from the sentence, you make take a direct appeal from the sentence.

You may also take a direct appeal from the sentence only on the following grounds:

1. The sentence exceeds the applicable statutory limits set forth in the United States Code -- and I can assure you that that's not going to happen in this courtroom -- or the sentence unreasonably exceeds the guideline range determined by the Court under the sentencing guidelines.

Do you understand that?

MR. PRICE:          Yes.

THE COURT:          Further, you also waive the right to file a motion to vacate sentence under 28 United States Code, Section 2255, and the right to file any other collateral proceeding attacking your conviction.

Do you understand that?

MR. PRICE:          Yes.

THE COURT:          Waivers of appeal are generally permissible if entered into knowingly and voluntarily, unless they work a miscarriage of justice.  I've examined the record and find no basis for invalidating your waiver in this case.

. . . .

THE COURT:          Mr. Hackney, would you kindly set forth, in summary form, the understanding of you and your client of the plea agreement.

. . . .

23

MR. HACKNEY:          [Defendant] waives the right to a direct appeal, as Your Honor
                     has described to him in detail.

. . . .

THE COURT:           Mr. Price, do you have a copy of the plea agreement?

MR. PRICE:           Yes.

THE COURT:           Have you read the plea agreement and reviewed it completely
                     with Mr. Hackney?

MR. PRICE:           Yes, sir.

THE COURT:           Do you understand all of the contents of that agreement?

MR. PRICE:           Yes, I do.

THE COURT:           Does it reflect your signature on Page 6?

MR. PRICE:           Yes, it does.

THE COURT:           And witnessed by your attorney?

MR. PRICE:           Yes, sir.

THE COURT:           Dated today?

MR. PRICE:           Yes, Sir.

THE COURT:           Was your signature placed on that document of your own free
                     will?

MR. PRICE:           Yes, sir.

The Court concludes the waiver of rights to appeal and collaterally attack the

conviction and sentence in this case was knowing and voluntary, based upon Price's own written

plea agreement, his statements and responses during the plea colloquy, and all the surrounding

circumstances.

24

The Court next must address whether enforcing the wavier will work a miscarriage of justice in this case.  Here again, *Khattack* and its progeny in the Third Circuit provide the principles of decision.  This test has been articulated as follows:

> In the waiver context, we have adopted a common sense approach in determining whether a miscarriage of justice would occur if the waiver were enforced.  In *Khattak,* 273 F.3d at 563, we endorsed the methodology of the Court of Appeals for the First Circuit, which suggested "the clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result" as factors to consider before invalidating a waiver as involving a "miscarriage of justice." *United States v. Tetter*, 257 F.3d 14, 25-26 (1st Cir. 2001).  At the same time, we have declined to identify a list of specific circumstances which would give rise to, or constitute, a miscarriage of justice.

*Mabry,* 536 F.3d at 242-43.

The Court has carefully considered the record in this case applying those factors, and must conclude that enforcing the waiver in this case will not work a miscarriage of justice.  There are no non-frivolous issues that Price could raise on a direct appeal.  His sentence was imposed in full conformity with his factual stipulations, the evidence, and the controlling substantive and procedural law.  Therefore, the Court finds and rules that any asserted failure of defense counsel to file a direct appeal did not constitute ineffective assistance of counsel such as to create a miscarriage of justice which would overcome Price's waiver of appeal rights.

In conclusion, the Court finds that Price's waivers of the right to appeal or collaterally attack the sentence that he received, meet the two-prong test in that they were (i) knowing and voluntary, as the plea agreement was clear, the colloquy was sufficient, and Price has not, nor did he during the plea or sentencing hearings, indicate that he did not understand,

and (ii) did not work a miscarriage of justice.  Thus, the Court concludes that "[e]nforcing the waiver is in line with justice, not a miscarriage of it."  *Mabry*, 536 F.3d at 244.

## Conclusion

For the reasons stated, the Court will dismiss Petitioner's motion without an evidentiary hearing.  His unsupported allegations of ineffectiveness, without more, do not satisfy the standards set out in *Strickland v. Washington*, 466 U.S. 668, 690 (1984).

## Certificate of Appealability

Upon the denial of a section 2255 motion by the district court, an appeal to the Court of Appeals is not permitted unless the petitioner obtains a certificate of appealability from "a circuit justice or judge." 28 U.S.C. § 2253(c).  "At the time a final order denying a petition under 28 U.S.C. § 2255 is issued, the district judge shall make a determination as to whether a certificate of appealability should issue." United States Court of Appeals for the Third Circuit Local Appellate Rule 22.2.  The application for such a certification should therefore be made to the district court in the first instance.  *See United States v. Williams*, 158 F.3d 736, 742 n. 4 (3d Cir. 1998).

The law permits the issuance of a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  In order to establish the denial of a constitutional right, the mere allegation of a constitutional wrong, such as deprivation of the rights to effective counsel, is insufficient; the petitioner must make a substantial showing of such an error in order to present an appeal.  *Santana v. United States*, 98 F.3d 752, 757 (3d Cir. 1996).  "The petitioner must demonstrate that reasonable jurists

would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

In this case, the Court finds that reasonable jurists would not find this Court's assessment of Price's claims debatable or wrong.  Thus, the Court will not issue a certificate of appealability.

An appropriate Order follows.


McVerry, J.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA     )
                             )
            v.                )     02: 08-cr-0312
                             )     02: 10-cv-0187
HAROLD D. PRICE           )

### ORDER OF COURT

     **AND NOW**, this 30th  day of March, 2010,  in accordance with the foregoing

Memorandum Opinion, it is hereby **ORDERED, ADJUDGED AND DECREED** that:

     1.     The Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct

Sentence by a Person in Federal Custody filed *pro se* by Petitioner Harold D. Price is

**DISMISSED** and the relief requested therein is **DENIED**; and

     2.     A certificate of appealability is not granted because Petitioner, Harold D.

Price, has not made a substantial showing of the denial of a Constitutional right.


                                    BY THE COURT:


                                    <u>s/Terrence F. McVerry</u>
                                    United States District Court Judge


cc:     Troy Rivetti,
          Assistant U.S. Attorney
          Email: Troy.Rivetti@usdoj.gov

          Harold D. Price,
          Register No. 09580-068
          FCI McKean
          P. O. Box 8000
          Bradford, PA 16701